## In re SOUTH BEARDSTOWN DRAINAGE & LEVEE DIST.

## BUCHHOLZ v. SOUTH BEARDSTOWN DRAINAGE & LEVEE DIST.

### No. 7691.

Circuit Court of Appeals, Seventh Circuit.

Dec. 12, 1941.

Ira J. Covey and Julian B. Venezky, both of Peoria, Ill., for appellant.

T. E. Bottenberg and Franklin D. Garrison, both of Rushville, Ill., and J. Bowers Campbell, of Washington, D. C., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

The South Beardstown Drainage and Levee District was authorized by order of the County Court of Cass County, August 14, 1913, pursuant to an Act of the State of Illinois to "Provide for the construction, reparation and protection of drains, ditches and levees," etc., enacted May 29, 1879, and amendatory acts thereto, Smith-Hurd Stats.Ill. c. 42, § 1 et seq. Since its organization it has functioned as a drainage district and as an instrumentality for the improvement of land in said district for agricultural purposes.

Its petition for confirmation of a proposed composition of its debts was presented to the United States District Court, and upon a showing that there were outstanding bonds amounting to $481,800 with unpaid interest in 1936 of $158,822, and upon a further showing that the holders of outstanding bonds, aggregating $467,800, or 96.8%, had consented to the plan, the order of confirmation was entered by the District Court. Appellant, the executrix

of the will of E. A. Buchholz, and holder of bonds of $12,000 par value, objected to the jurisdiction of the court and to the authority of the Drainage District Commissioners to file these proceedings and to make this composition. Her objections were overruled, and she now appeals from the order approving the composition. She raises several legal disputes which her counsel state in question form:

(1) Does a political subdivision of the State of Illinois in general, and a drainage district in particular, have the right to maintain a proceeding for composition of its indebtedness, pursuant to Chapter IX of the Bankruptcy Act, 11 U.S.C.A. § 401 et seq., in the absence of a provision in the Illinois statutes giving consent to the filing of such proceedings?

(2) Under the statute of Illinois (Chapter 42, Sec. 38a, Ill.Rev.Stat.), is a drainage district, organized under the laws of Illinois, prohibited from filing a petition for composition with its creditors under Chapter IX of the Bankruptcy Act?

(3) Under the said statute of Illinois, does a drainage district have authority to borrow money for the purpose of scaling down its indebtedness?

(4) Under the said statute of Illinois, can a drainage district maintain proceedings for composition of its indebtedness in the absence of express approval of the county court which organized the district?

(5) Under said statute of Illinois, can a holder of drainage district bonds which are not due, be compelled to surrender such bonds and accept therefor 25% of their par value?

(6) Are the acts of appellee, in attempting to carry out the proposed plan of composition, ultra vires?

Arguing that a drainage district can only exercise the express, or necessary implied, powers given it by the State of Illinois, appellant contends that the drainage district did not possess the power, or authority, to apply to the District Court for a composition of its debts, or to seek relief under the Bankruptcy Act. Counsel also argue that the district's authority is further restricted to action which first meets the approval, and the authorization, of the county court which created it.

A lengthy discussion of interesting and serious legal questions is made unnecessary by the decision of the Supreme Court in United States v. Bekins, 304 U.S. 27, 58 S.Ct. 811, 82 L.Ed. 1137, and the numerous decisions of inferior courts (Luehrmann v. Drainage Dist. No. 7, 8 Cir., 104 F.2d 696; West Coast Life Ins. Co. v. Merced Irr. Dist., 9 Cir., 114 F.2d 654; Bekins v. Lindsay-Strathmore Irr. Dist., 9 Cir., 114 F.2d 680; Moody v. James Irr. Dist., 9 Cir., 114 F.2d 685; Newhouse v. Corcoran Irr. Dist., 9 Cir., 114 F.2d 690; Jordan v. Palo Verde Irr. Dist., 9 Cir., 114 F.2d 691; American National Bank, Nashville v. City of Sanford, 5 Cir., 112 F.2d 435; Davis v. City of Homestead, 5 Cir., 112 F.2d 438) in all of which lower court decisions, certiorari has been denied by the Supreme Court. While the denial of certiorari is of itself not of any significance, the rejection of numerous petitions, all in drainage district cases wherein this same statute was invoked and applied by the lower courts, can hardly be ignored. In fact they are of impelling weight.

Appellant's numerous objections to the court's jurisdiction may be said to depend primarily upon the necessity of consent by the state (here allegedly absent) to the institution of proceedings to compromise debts under said section of the Bankruptcy Act. This is the heart of appellant's objections.

Reliance for this position is upon Ashton v. Cameron County Water Imp. District, 298 U.S. 513, 56 S.Ct. 892, 80 L.Ed. 1309. But, as pointed out in the Bekins case, (a) Chapter X (the present Chapter IX) of the Bankruptcy Act deals with *compositions* of indebtedness of taxing agencies or instrumentalities therein described and (b) no compromise proceeding is permitted, save upon application of the debtor. It must be a voluntary proceeding.

Moreover, the petition in the first instance must be approved by 51% of all the creditors of the drainage district. The confirmation of the composition is dependent upon approval by 66⅔% of the aggregate amount of the total indebtedness. These specific requirements but emphasize the absence of consent of the state as a requirement, especially as Chapter X, the predecessor of Chapter IX, required such consent.

Commenting upon the necessity of consent, the Court, in the Bekins case [304 U.S. 27, 58 S.Ct. 814, 82 L.Ed. 1137], said:

"Our attention has been called to the difference between section 80 (k) of chapter 9 and section 83 (i) of chapter 10 of

the Bankruptcy Act, 11 U.S.C.A. §§ 303, sub. k, 403, sub. i, in the omission from the latter of the provision requiring the approval of the petition by a governmental agency of the State whenever such approval is necessary by virtue of the local law. We attach no importance to this omission. It is immaterial, if the consent of the State is not required to make the federal plan effective, and it is equally immaterial if the consent of the State has been given, as we think it has in this case."

It is significant that Chapter IX of the new act did not require the approval of the petition by the state or a governmental agency, yet of this former Chapter X, the court said,

"We are of the opinion that the Committee's points are well taken and that Chapter 10 is a valid enactment."

█ █ We are satisfied that the authority of a debtor, such as petitioner, to seek the relief offered by Chapter IX of the Federal Bankruptcy Act, to-wit, the compromise of its debts, exists. The Constitutional provision which gave to Congress the power to enact uniform bankruptcy legislation made the Federal Bankruptcy Law, the exclusive and dominant law of the land on the subject of bankruptcy. As a corollary, it necessitated a recognition of the paramount and exclusive jurisdiction of the Federal courts in matters of bankruptcy, when that jurisdiction is properly invoked. Neither the jurisdiction of the Federal courts, nor the Federal laws set forth in valid Federal bankruptcy statutes, can be defeated by the debtor or by state legislation. The limitation of congressional power, which was recognized in the Ashton v. Cameron County Water Improvement District case, is inapplicable here. That case is distinguished in United States v. Bekins, supra, where the former Chapter X was specifically upheld as a valid exercise of Congressional powers. And this holding was made with full knowledge that said Chapter X did not require consent of the state or its agency.

█ Quite elementary, we think, is the authority of a drainage district which finds itself unable to meet its indebtedness, both principal and interest, to borrow money to compromise its debts. In so doing, its trustees do not act ultra vires. We can think of no business which has not the implied authority to do that (reduce its debts), which will avoid complete demise, or most equitably meet its obligations. Such authority is an incident of existence.

Equally clear do we think it is not only valid, but entirely proper, for a drainage district to seek the aid of the Federal court of bankruptcy, to scale down its indebtedness and borrow money for that purpose, where, as here, substantially all its creditors agree thereto.

Our attention has not been called to any provision of the Illinois statute which requires the trustees of the drainage district to secure authorization from the county court to take the steps here taken to compromise its obligations. While we think it would have been better to have sought and secured the approval and authorization of the County Court, it was not required to do so.

The decree of the District Court is Affirmed.