**REYNOLDS METALS COMPANY, Plaintiff,**

v.

**COLUMBIA GAS SYSTEM, INC., et al., Defendants.**

**Civ. A. No. 87–0446–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

Sept. 16, 1988.

---

Thomas G. Slater, R. Noel Clinard, Michael J. Lockerby, Hunton & Williams, Richmond, Va., William F. Young, James F. Bowe, Jr., Hunton & Williams, Washington, D.C., for plaintiff.

Dana D. McDaniel, John S. Graham, III, Ann Adams Webster, John D. Epps, Browder, Russell, Morris & Butcher, P.C., Richmond, Va., John E. Beerbower, Cravath, Swaine & Moore, New York City, for defendants.

## MEMORANDUM

MERHIGE, District Judge.

This matter comes before the Court on the motion of defendants, Columbia Gas System, Inc. ("System") and Columbia Gas System Service Corporation ("Service Corp."), under Fed.R.Civ.P. 12(b)(2) and (3) for their dismissal from the case for lack of personal jurisdiction and for improper venue. The same defendants have moved in the alternate for summary judgment in their favor on all claims. The issues have been extensively briefed, oral arguments have been heard, and the matter is now ripe for disposition. The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1337, and the doctrine of pendent jurisdiction.

### Background

This motion arises in an antitrust action involving inter- and intrastate sales and transportation of natural gas. Plaintiff has alleged violations of §§ 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2) as well as violations of the Virginia Antitrust Act (59.1–9.17 [1987]). Plaintiff has named as defendants various companies within the Columbia and Commonwealth gas production and transportation system, a vertically integrated, multi-state enterprise.

According to movants' characterizations, System is a registered public utility holding company, operated pursuant to the Public Utility Holding Company Act of 1935, and owns 100 percent of the stock of the supply and transportation operating companies involved in this lawsuit. Service Corp. is a mutual service company, authorized by the same Act and approved by the Securities and Exchange Commission ("SEC"). Service Corp.'s role is to provide efficient, centralized support services to affiliated members of the system, subject to oversight by the SEC.

Service Corp. was recently brought into this case by an amendment to plaintiff's complaint on April 14, 1988. By contrast, System, although currently a defendant by virtue of the same amendment, has prior involvement in the case. System was a named defendant in plaintiff's original complaint of June 26, 1987. On September 23, 1987, 669 F.Supp. 744, this Court dismissed System as a defendant finding, prior to any significant factual development via discovery, that venue in Virginia was inappropriate as to System and that plaintiff had failed to state a claim against System upon which relief could be granted. Subsequently, on April 14, 1988, System once again became a named defendant after the Court granted leave to plaintiff to amend its complaint. The Court at that time was satisfied that evidence newly adduced by plaintiff would overcome motions for dismissal by System and Service Corp.

### Discussion

1. *Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction*

The arguments made by the parties in support of and in opposition to this motion

compel the court to clarify the true nature of the motion. Defendants System and Services Corp. have centered their arguments in this rule 12(b)(2) motion on the application of section 12 of the Clayton Act ("section 12") to the facts at hand. Section 12, titled "District in which to sue corporation," states that:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found. 15 U.S.C. § 22 (1982).

Plaintiff, in turn, has responded with arguments focusing on interpretation of section 12. Both sides effectively characterize this 12(b)(2) motion as one involving "personal jurisdiction."

In the Court's view, counsel's characterization is inappropriate, for the instant motion does not encompass issues of "personal jurisdiction" as that term is commonly understood. In its common usage, personal jurisdiction connotes satisfaction *vel non* of the federal constitutional due process standards set out in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and that case's progeny. By contrast, the arguments of the parties to this motion solely reflect statutory interpretations of section 12. Regrettably, the Court is not prepared at this time to rule on the issue of personal jurisdiction, in the constitutional due process sense, as to System and Services Corp.

The parties appear to agree that in the context of section 12, the necessary analyses for the 12(b)(2) "personal jurisdiction" motion and the accompanying 12(b)(3) "venue" motion, *infra*, are one and the same. In *Sportmart v. Frisch*, 537 F.Supp. 1254, 1257 (N.D.Ill.1982) (citing *United States v. Scophony Corporation*, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948)), the court stated: "[i]t is established that, as far as the Court's power over a non-resident corporate defendant is concerned, the jurisdiction and venue analyses are virtually con-

gruent, since both are controlled by general due process principles." *See also Call Carl, Inc. v. BP Oil Corporation*, 391 F.Supp. 367, 370 (D.Md.1975) (characterizing a section 12 analysis as one involving venue and personal jurisdiction). Further, according to the court in *Sportmart*, "[i]f venue is proper, then *personal jurisdiction* may be obtained over the defendants by extra-territorial service of process." *Id.* (emphasis added).

In the Court's view, this characterization of section 12's analytical framework states too much to the extent that the *Sportmart* court refers to due process principles. It is true that the text of section 12, supra, provides for both venue and extra-territorial service of process. The Court also acknowledges that where venue is found to be proper, extra-territorial service of process is permissible. The provision for extra-territorial service of process referred to in section 12, however, is analagous to a state long-arm statute in that section 12 provides a *statutory* grant of personal jurisdiction. As with applications of state long-arm statutes to effectuate extra-territorial service of process, application of section 12's provision for extra-territorial service must *in every case* satisfy constitutional due process principles. Satisfaction of the requisite due process standards are tested by the familiar "minimum contacts" analysis of *International Shoe* and its progeny.

The Supreme Court in *Scophony* made specific reference to this statutory-constitutional distinction and concluded its analysis of the section 12 matter before it without addressing constitutional concerns. *See* 333 U.S. at 804, 68 S.Ct. at 860; *accord First American First v. National Ass'n of Bank Women*, 802 F.2d 1511, 1515 (4th Cir.1986). According to the *Scophony* Court: "We deal here with a problem of statutory construction, not one of constitutional import ... The issue is simply how far Congress meant to go, and specifically whether it intended to create venue and liability to service of process through the occurrence within a district of the kinds of acts done here on Scophony's behalf." 333

U.S. at 804, 68 S.Ct. at 860. The Court carefully refused to equate the statutory analysis with the due process analysis under the principles of *International Shoe*, a case the Court had decided only three years earlier. *Id.* at 804 n. 13, 68 S.Ct. at 860 n. 13.

This statutory-constitutional distinction does not foreclose a due process review of the application of section 12 extra-territorial service of process. The Court merely states that in the absence of a full briefing on due process concerns, it deems it inappropriate to equate the "transacts business" venue standard of section 12 with the minimum contacts due process standard despite any apparent similarities between the two standards.

In the Court's view, this Rule 12(b)(2) motion, to the extent it goes to the *statutory* provision of personal jurisdiction in section 12, turns on the finding *vel non*, below, of venue under section 12.

## II. *Rule 12(b)(3) motion to dismiss for lack of venue*

The Court takes note that throughout its argument in opposition to this motion, plaintiff refers to evidence adduced in support of its earlier, successful motion to amend the complaint and add System and Service Corp. as defendants. In that earlier motion, plaintiff satisfied the Court that sufficient facts were asserted, which if proved, would implicate System and Service Corp. in the activities alleged to constitute the antitrust law violations underlying this case. The memorandum accompanying the Court's earlier order allowing amendment of the complaint stated that "[t]he Court cannot conclude at this time that the amended complaint would be subject to dismissal as to System and Service Corp. under the deferential treatment afforded to a complaint under *Conley v. Gibson*, 355 U.S. 41, 47 [78 S.Ct. 99, 102, 2 L.Ed.2d 80] (1957)."

In their memorandum supporting the current motions to dismiss, System and Service Corp. come forth primarily with further challenges to the facts alleged by plaintiff in its earlier motion to add System

and Service Corp. by amendment of the complaint. This is done in the context of motions to dismiss pursuant to Fed.R. Civ.P. 12(b), not within the context of a motion for summary judgment under Fed. R.Civ.P. 56. This Court declines the invitation to participate in the chipping away of yet another portion of our system of notice pleading by retreating, in this Rule 12(b) analysis, to the trend of fact pleading taking place in the realm of summary judgment.

Further, the Court finds, for reasons which follow, that plaintiff has adduced sufficient facts to withstand System's and Service Corp.'s motion for summary judgment on the antitrust claims. Congress certainly cannot be interpreted to have created antitrust venue and jurisdiction standards that are more stringent than the related antitrust liability standards.

The court accordingly finds that on the basis of facts adduced at this point in the litigation, venue in this district is appropriate as to both System and Service Corp. as is *statutory* personal jurisdiction via extra-territorial service of process. The motions of System and Service Corp. under Fed.R. Civ.P. 12(b)(2) and (3) must be denied.

## III. *System's and Service Corp.'s motion for summary judgment on all claims*

In their memorandum supporting the motion for summary judgment on all claims, System and Service Corp. assert that "[a]ll of the actual alleged actions underlying Reynold's claims were undertaken by [the system operating companies named as defendants in this case.]" System's and Service Corp.'s principal argument is that before the Court can attribute any liability from these actions to System and Service Corp., it must first pierce the corporate veil. Plaintiff's response, calling defendants' piercing the corporate veil argument "irrelevant," states that the rationale of the Supreme Court's opinion in *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984) "supports the holding that System's control of its subsidiaries makes System,

Service Corp. [and the other operating companies named as defendants] a single entity for purposes of antitrust analysis."

Although the Court is doubtful that *Copperweld Corp.* does in fact create such an "enterprise" basis for antitrust liability, *see* 467 U.S. at 776–77, 104 S.Ct. at 2744, the Court concludes that it is not necessary to base its denial of defendants' summary judgment motion on plaintiff's *Copperweld Corp.* theory. Denial of the summary judgment motion is warranted here because plaintiff, in materials supporting its earlier motion to amend the complaint (which plaintiff reincorporated for purposes of this motion), has "designate[d] specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), of whether the alleged policy of tying gas transportation to gas purchases originated within the System and Service Corp. corporate entities. Defendants' further assertions and related factual submissions (1) that the alleged transportation policies originated in entities below System and Service in the System's hierarchy and (2) that plaintiff's theory on where the transportation policies originated lacks credibility merely emphasize the existence of genuine issues of material facts. Accordingly, the motion of System and Service Corp. for summary judgment must be denied.

An appropriate Order shall issue.

### ORDER

For the reasons stated in the Memorandum of the Court this day filed and deeming it proper so to do, it is ADJUDGED and ORDERED:

1. that defendants' motions to dismiss for lack of personal jurisdiction and for improper venue filed May 13, 1988 be and the same are hereby DENIED; and

2. that defendants' motion for summary judgment filed May 13, 1988 be and the same is hereby DENIED.